IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A MOTOROLA CELLPHONE MODEL MC3AA LOCATED IN AN EVIDENCE LOCKER AT 5425 WEST AMELIA EARHART DRIVE, SALT LAKE CITY, UTAH | Case No. 2:25mj664 PK |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Jarrod Girod, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device, further described in Attachment A—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since 2016. In my capacity as a Special Agent, I am responsible for investigating violations of federal criminal laws, particularly on the Navajo and Ute Indian Reservations. As a Special Agent with the FBI, I have participated in or received training related to the investigation of violent crimes, fugitive investigations, and other criminal matters. I have executed many search warrants and led multiple investigations into crimes of violence, including investigations requiring the examination of electronic devices.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a white Motorola cell phone, model MC3AA, hereinafter "Device," which was seized pursuant to a premises search warrant on June 10, 2025, and has been securely stored at an FBI evidence locker located at 5425 West Amelia Earhart Drive, Salt Lake City, Utah.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. The FBI is investigating Chevel Cottonwood, an enrolled member of the Navajo Nation and a convicted felon, for *Murder while Within Indian Country* in violation of 18 U.S.C. §§ 1111(a) and 1153(a), as well as for *Felon in Possession of a Firearm and Ammunition* in violation of 18 U.S.C. § 922(g)(1). The alleged victim is Billie Winston, who is also believed to be an enrolled member of the Navajo Nation. The probable cause for this search warrant is as follows.

7. At approximately 5:26 AM on June 10, 2025, Navajo Police Department dispatch received a call reporting gunfire near the Hovenweep area north of Aneth, Utah. The dispatch call taker recorded the call as coming from someone named "Tori Benally" with the phone number (970) 560-1855. The caller explained that Winston Billie was shot by Chevel Cottonwood at an address located near Hovenweep and provided GPS coordinates for the residence.

8. At approximately 5:41 AM on June 10, 2025, I received a call from Jeff Joe, a criminal investigator with the Navajo Department of Criminal Investigations, who provided me with more information about this matter.

9. Investigator Joe stated that Navajo Police Department officers promptly went to the coordinates provided by "Tori Benally," which are located on the Navajo Nation. Responding officers met with "Jo Merritt," who described herself as the girlfriend of the alleged victim, Winston Billie.

10. Ms. Merritt told officers that she had recently returned from Salt Lake City and was staying with Mr. Billie. She explained that she was trying to sleep when she heard two gunshots from the living room at approximately 4:00 AM on June 10, 2025. She stated that Mr. Billie then came into her room and told her he did not know why Chevel Cottonwood was acting the way he was. Mr. Billie then went back to the living room and started arguing with Chevel Cottonwood. Thereafter, Ms. Merritt says she heard another gunshot and saw the flash of the gun being discharged. Ms. Merritt then went to the living room and saw Mr. Billie laying on the floor bleeding from an apparent gunshot wound.

11. Around this same time, I operated an unmanned aerial vehicle (drone), and observed the suspect, Mr. Cottonwood, hiding in some bushes near the residence, in an area believed to be land that is part of his property. Mr. Cottonwood was observed placing several items on the ground and picking some things up near where he was hiding. When it was determined that he was heading back to the residence, officers intercepted and detained him. Mr. Cottonwood was found with a magazine loaded with 9mm ammunition on his person. Navajo Nation Police officers also observed a firearm located on the ground near where he was detained.

12. After Mr. Cottonwood was detained, responding officers entered Mr. Cottonwood's residence justified by the emergency to check on the status of the victim. Officers found Mr. Billie deceased with an apparent gunshot wound and an empty shell casing next to him, which was later determined to be a 9mm shell casing. After consulting with the FBI and the Navajo Department of Criminal Investigations, the officers left Mr. Cottonwood's residence and cordoned the area off until a valid search warrant could be obtained.

13. The search warrant for Mr. Cottonwood's residence was obtained and executed on June 10, 2025. During the execution of the search warrant, the Device was found in a plastic Ziploc bag with a single unfired 9mm round. The Device was found in the same area that Mr. Cottonwood was earlier seen hiding in near some large bushes.

14. During a post-*Miranda* interview with Mr. Cottonwood, he denied ownership of the Device and instead stated that the Device belonged to an individual from whom Mr. Billie had stolen a vehicle. However, I do not consider this information credible based on my observations of Mr. Cottonwood before his arrest, as well as the subsequent location of the Device in a Ziploc bag with the same caliber of casing found next to the victim.

15. On June 25, 2025, a federal grand jury sitting in the District of Utah returned an indictment charging Mr. Cottonwood with one count of *Murder while Within Indian Country*, a violation of 18 U.S.C. §§ 1111(a) and 1153(a), and one count of being a *Felon in Possession of a Firearm and Ammunition*, violation of 18 U.S.C. § 922(g)(1).

16. The Device is currently in the lawful possession of the FBI at 5425 West Amelia Earhart Drive, Salt Lake City, Utah. As discussed, it came into the FBI's possession during the execution of a valid premises search warrant. Therefore, while the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of

caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

17.     The Device is currently in storage at 5425 West Amelia Earhart Drive, Salt Lake City, Utah. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cell phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

       Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://en-us.support.motorola.com/. The Device is also commonly referred to as a Motorola Moto G Pure smartphone. I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

[continued on next page]

## **CONCLUSION**

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ *Jarrod Girod*
Jarrod Girod
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on July 15, 2025:

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a white Motorola cell phone, model MC3AA, hereinafter "Device," which was seized pursuant to a premises search warrant on June 10, 2025, and has been securely stored at an FBI evidence locker located at 5425 West Amelia Earhart Drive, Salt Lake City, Utah.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. §§ 1111(a) and 1153(a), as well as 18 U.S.C. § 922(g)(1), and involve Chevel Cottonwood, including:

    a. any information related to the ownership of any firearms, or purchase of any firearms or ammunition;

    b. any information regarding Winston Billie or "Jo Merritt";

    c. any information that could explain a possible motive or state of mind for Chevel Cottonwood's actions on June 10, 2025; and

    d. any information recording Chevel Cottonwood's schedule or movements on June 10, 2025; and

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and

technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.